<div style="float:left">**United States District Court**
For the Northern District of California</div>

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC JAMES BAKER,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>COUNTY OF SONOMA, et al.<br><br>　　　　　Defendants.　　　　　　／ | No. C-08-03433 EDL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT; GRANTING PLAINTIFF'S MOTION TO STRIKE; DENYING PLAINTIFF'S MOTION TO EXPAND RECORD** |

　　　　Defendants County of Sonoma, Sonoma County Sheriff's Department, Bill Cogbill, Lewis Lincoln, Daniel Cortez and Eduardo Espino (the "County Defendants") filed a motion to dismiss this action arising from injuries sustained by Plaintiff Eric James Baker on or about September 8, 2007, while he was in the custody of Sonoma County at the Sonoma County Main Adult Detention Facility. Doc. no. 30. Defendants California Forensic Medical Group and Dr. James Luders (the "CFMG Defendants") filed a statement of non-opposition to the motion to dismiss. Doc. no. 44. The Court held a hearing on the motion to dismiss on January 27, 2009. For the reasons stated at the hearing and below, the Court issues the following Order.

**BACKGROUND**

　　　　According to allegations in the First Amended Complaint, on or about September 8, 2007, law enforcement officials of the County and Sheriff's Department took Plaintiff into custody at the Sonoma County Main Adult Detention Facility. FAC ¶ 16. Defendant Corrections Officer Lewis Lincoln handcuffed Plaintiff's left wrist tightly, and when Plaintiff complained of the pain, he was told to "shut up." FAC ¶ 17. After Plaintiff complained again, Defendant Lincoln twice slammed Plaintiff's head into a cement wall and told him to "shut up." FAC ¶¶ 17, 18. Defendant Lincoln

1  and Defendant Daniel Cortez took Plaintiff to his cell and forced him onto a bunk bed by lifting his
2  wrists behind his back and jammed his face into the wall, scraping the skin off Plaintiff's shins
3  against the metal bed. FAC ¶ 19. Defendants Lincoln and Cortez removed the handcuffs and left
4  Plaintiff in the cell, ignoring his injuries and alleged need for medical attention. FAC ¶ 20. Plaintiff
5  alleges that as a result of this beating, he sustained a depressed, comminuted fracture in the
6  zygomatic arch, the bone on the side of the cheekbone along the ear. FAC ¶ 35. Plaintiff suffered
7  facial pain, swelling and bruising, making it difficult to open his mouth or right eye or to yawn, eat,
8  breathe or hear out of his right ear. FAC ¶ 21.

9  Plaintiff further alleges that from about September 9 to September 12, 2007, his requests for
10 pain medication, right to speak to physician, medical request form and grievance forms were denied.
11 FAC ¶ 23. His requests for his medications for depression and anxiety were also denied. Id. On or
12 about September 19, 2007, Dr. Harpford examined Plaintiff and ordered x-rays. FAC ¶¶ 26, 29. On
13 or about September 20, 2007, Plaintiff was given pain medication, but the jail stopped providing
14 medication on or about September 23, 2007. FAC ¶¶ 27, 28. Defendant Espino allegedly refused to
15 provide Plaintiff with a grievance form for the withdrawal and/or denial of his medications. FAC ¶
16 28.

17 On or about September 25, 2007, Plaintiff was taken for x-rays, and the diagnostic report
18 indicated no observable fractures but that further evaluation with computed tomography should be
19 determined clinically. FAC ¶ 29. Dr. Luders, working for Defendant CFMG on contract to the
20 County and Sheriff's Department, informed Plaintiff that the x-rays were normal. FAC ¶ 29.
21 Plaintiff continued to experience headache, numbness in his teeth, difficulty breathing and eating,
22 blurred vision, loss of balance and depth perception and trouble concentrating and holding objects.
23 FAC ¶¶ 31, 32. On or about October 1, 2007, Dr. Harpford informed Plaintiff that the x-rays
24 showed the facial plate in an abnormal position, restarted Plaintiff's pain medications with increased
25 dosage, and later ordered more x-rays and CT scans. FAC ¶¶ 31, 32. Plaintiff was diagnosed with a
26 depressed, comminuted fracture of the right zygomatic arch, missing teeth, limited facial movement,
27 and a bony prominence on his right orbital wall. FAC ¶¶ 35, 36.
28

2

Plaintiff alleges that jail personnel erratically administered or denied Plaintiff his pain medications, continuing until Plaintiff's release in May 2008. FAC ¶¶ 33, 34, 39. Following Plaintiff's CT scan and dentist visit, Dr. Luders responded to Plaintiff's request for medical attention, diagnosed an infection, and prescribed antibiotics. FAC ¶¶ 35-37. Dr. Luders informed Plaintiff that the CT scans were normal. FAC ¶ 37.

On or about November 1, 2007, Plaintiff was examined by an oral surgeon who confirmed the diagnosis of a depressed, comminuted fracture of the right zygomatic arch. FAC ¶ 38. The oral surgeon indicated that if Plaintiff had received timely, adequate medical intervention, it may have been possible to reset the bones, but it was too late to do so, advising that Plaintiff wait a year for his face to heal and undergo surgery. FAC ¶ 38.

**LEGAL STANDARD**

A motion to dismiss is appropriate when the plaintiff's allegations fail to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court should not grant dismissal unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). In analyzing a motion to dismiss, the court must accept as true all allegations of material facts set forth in the complaint, and draw reasonable inferences in the light most favorable to the plaintiff. Pareto v. Fed. Deposit Ins. Co., 139 F.3d 696, 699 (9th Cir. 1998). Dismissal without leave to amend is improper, unless no amendment could possibly cure the pleading's deficiencies. Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1296 (9th Cir. 1998).

**DISCUSSION**

I.     Failure to Exhaust Remedies

    A.     Prison Litigation Reform Act

Defendants do not dispute that Plaintiff was not incarcerated at the time he filed suit. Defendants contend that Plaintiff should nevertheless be held to the exhaustion requirement of the Prison Litigation Reform Act of 1995 ("PLRA"), which provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

3

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Plaintiff counters that he was not incarcerated at the time he filed his complaint, and therefore is not bound by the requirement under the PLRA to exhaust administrative remedies.

Although the Ninth Circuit has not directly answered the question whether the PLRA exhaustion requirement applies to former prisoners after they are released from incarceration, the Ninth Circuit has held that an individual civilly committed pursuant to California's Sexually Violent Predators Act is not a "prisoner" within meaning of 42 U.S.C. § 1997e. The Ninth Circuit reasoned that only individuals who, at the time they seek to file their civil actions, are detained as a result of being accused of, convicted of, or sentenced for criminal offenses, are "prisoners" within the definition of 42 U.S.C. § 1997e. Page v. Torrey, 201 F.3d 1136, 1140 (9th Cir. 2000).

Some district courts, distinguishing Page on the ground that Page differentiated civil commitment from criminal sanctions, have held that the PLRA exhaustion requirement applied to prisoners who file suit after their release. See Morgan v. Maricopa Co., 259 F. Supp. 2d 985 (D. Ariz. 2003) (granting defendants' motion for summary judgment and dismissing the case for failure to exhaust); Mason v. Co. of San Mateo, 2005 WL 3957924 (N.D. Cal. Jan. 26, 2005) (granting motion to dismiss for failure to exhaust, citing Porter v. Nussle, 534 U.S. 516, 532 (2002) and Booth v. Churner, 532 U.S. 731, 739-40 (2001)). Mason reasoned that the PLRA's exhaustion requirement "'applies to all inmate suits about prison life,'" and that exempting former prisoners from the exhaustion requirement would thwart the legislative intent of the PLRA to afford corrections officers the opportunity to address complaints internally and to develop an administrative record for cases that reach judicial review. 2005 WL 3957924 at *2-3 (quoting Porter, 534 U.S. at 532).

Several judges within the Ninth Circuit, including in this district, however, have concluded that the PLRA exhaustion requirement does not apply to former prisoners who file federal claims after they are released from custody, based on the plain language of the statute. Kritenbrink v. Crawford, 313 F.Supp.2d 1043, 1047 (D. Nev. 2004); Valdivia v. Co. of Santa Cruz, 2008 WL 4065873 (N.D. Cal. Aug. 27, 2008) (exhaustion requirement of PLRA does not apply to former inmates); Spears v. City and County of San Francisco, 2008 WL 2812022 (N.D. Cal. Jul. 21, 2008).

4

1  In Valdivia, the court declined to adopt the reasoning of Mason and Morgan, holding that "[o]n its
2  face, the statutory language indicates that the PLRA's requirements only apply to plaintiffs who are
3  currently incarcerated or detained." 2008 WL 4065873 at *3. Valdivia noted that both Booth and
4  Porter, on which Mason and Morgan relied, concerned plaintiffs who were incarcerated when they
5  filed their respective complaints, and neither Supreme Court decision addressed the issue of whether
6  the PLRA's exhaustion requirement applies to former inmates. Id. Defendants also cite Woodford
7  v. Ngo, 548 U.S. 81 (2006) in support of their argument that the exhaustion requirement under the
8  PLRA must be construed broadly, but in Woodford, as in Booth and Porter, the plaintiff was
9  incarcerated at the time he filed in federal court. 548 U.S. at 86-87. Valdivia also noted that "every
10 circuit court that has addressed the issue has found that the PLRA's exhaustion requirement does not
11 apply to out-of-custody plaintiffs." 2008 WL 4065873 at *3. See id. at *2 n.2. See also Spears,
12 2008 WL 2812022 at *4 (noting that the courts of appeals that have considered this issue have all
13 concluded that it is the plaintiff's status at the time he files suit that determines whether the PLRA
14 exhaustion requirement applies).

15 In the absence of appellate authority to the contrary, the Court adopts the reasoning of
16 Valdivia to conclude that the PLRA exhaustion requirement does not apply to Plaintiff's claims,
17 which were filed after he was released from custody. Because the Court concludes that the PLRA
18 exhaustion requirement does not apply, the Court need not reach the question of whether
19 administrative remedies were available to Plaintiff, or whether Defendants are estopped from
20 asserting the exhaustion defense.

21 Accordingly, the motion to dismiss the § 1983 claims (First, Second and Third Causes of
22 Action) on the ground of failure to exhaust is denied. Plaintiff's Motion to Expand Record on
23 County Defendants' Motion to Dismiss is denied as untimely (docket no. 49).

24     B.    State Regulations

25 Plaintiff contends that Defendants improperly raise a new ground for their motion to dismiss
26 in their reply brief, namely, that California law requires a prisoner to exhaust administrative
27 remedies before filing state law claims. Defendants' opening brief on the motion seeks relief solely
28 on the basis of failure to exhaust pursuant to 42 U.S.C. § 1997e(a), and Defendants' argument in

5

their reply brief on the exhaustion requirement under state law spans only three paragraphs. The Ninth Circuit authority cited by Defendants in their opening brief, Wyatt v. Terhune, 315 F.3d 1108 (9th Cir. 2003), only addresses the exhaustion requirement under the PLRA, not under state law. Although Plaintiff argued in his opposition brief that his state law claims are not subject to the exhaustion requirement under the PLRA, it cannot be fairly said that Plaintiff argued that there is no exhaustion requirement as to his state law claims, as Defendants suggest in their reply brief. Thus, the Court agrees with Plaintiff that Defendants improperly raise a new ground for dismissal of the state law claims for failure to exhaust under state law in their reply brief. Therefore, Plaintiff's motion to strike the state law exhaustion argument from Defendants' reply brief is granted without prejudice.

II.     Failure to State a Claim

     A.     Claims Against Individual Defendants Espino and Cogbill

Defendants contend that the allegations against Defendant Espino are insufficient to allege a constitutional deprivation of medical treatment, or other cognizable claim. Viewed in the light most favorable to Plaintiff, the allegations sufficiently state cognizable claims against Espino of deliberate indifference to medical needs, negligence pursuant to California Government Code section 844.6, and failure to summon medical care pursuant to Government Code section 845.6, negligent and intentional infliction of emotional distress, and interference with civil rights pursuant to Civil Code section 52.1: "On or about October 8, Espino personally denied Mr. Baker his prescribed medication. On or about October 9, after returning to his cell from a probation interview, Mr. Baker asked Defendant Espino for his medication; Defendant Espino responded to the effect of "no, you missed it." FAC ¶ 33.

Plaintiff seeks leave to amend the complaint to raise allegations that Espino failed to present completed grievance forms to the jail's medical staff. Opp. at 12 n.11. The Court hereby grants leave to so amend.

Defendants further contend that there are no allegations of wrongdoing by Defendant Cogbill, an elected official who is the head of the Sonoma County Sheriff's Department, other than that Cogbill ratified the conduct of the other defendants and/or failed to properly train or supervise

6

the other defendants. FAC ¶ 68. Defendants point out that respondeat superior liability does not apply in § 1983 actions. Under § 1983, "[a] supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991); Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (approving jury instruction that police chief would be "liable in his individual capacity if he 'set[ ] in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he kn[e]w or reasonably should [have] know[n], would cause others to inflict the constitutional injury.' Supervisory liability is imposed against a supervisory official in his individual capacity for his 'own culpable action or inaction in the training, supervision, or control of his subordinates,' for his '"acquiescence in the constitutional deprivations of which the complaint is made;"' or for conduct that showed a '"reckless or callous indifference to the rights of others."'") (internal citations omitted). The causal connection can be shown by authorizing or approving practices that cause injury (see Redman, 942 F.2d at 1147-48); by inadequate training (see Preschooler II v. Clark County School Bd. of Trustees, 479 F.3d 1175, 1183); by acquiescence in longstanding policy (see Los Angeles Police Protective League v. Gates, 907 F.2d 879, 894 (9th Cir. 1990)); or by condoning actions of subordinates (see Blankenhorn v. City of Orange, 485 F.3d 463, 485-86 (9th Cir. 2007)).

Defendants argue that the allegations do not support the state law claims against Cogbill, citing California Government Code section 820.8 which provides that "a public employee is not liable for an injury caused by the act or omission of another person," but a public employee may be liable for "injury proximately caused by his own negligent or wrongful act or omission." Individual liability may be established by negligent training, retention, supervision or control of employees or agents, approval of the actions of subordinates, actual awareness of an unlawful custom or practice, or responsibility for developing and promoting policies causing the alleged injury. See, e.g., Khatib v. County of Orange, 2008 WL 822562 at *13 (C.D. Cal. Mar. 26, 2008). However, liability cannot be based on an allegation that an individual merely ratified a subordinate's decision. See Williams v. City of Oakland, 2008 WL 268985 (N.D. Cal. 2008) ("A policymaker's deferential review of a

7

subordinate's discretionary decision is not the basis for Section 1983 liability, unless a subordinate's decision is cast in the form of a policy statement and expressly approved by a policymaker or if a series of decisions by a subordinate official show a custom of which a supervisor must have been aware.") (citing Gillette v. Delmore, 979 F.2d 1342, 1348 (9th Cir.1992)).

Here, Plaintiff alleges that "[b]y failing to properly hire, screen, train, supervise, and/or discipline its personnel," and "[b]y authorizing, ratifying, performing, and/or condoning the acts and omissions of Defendants Lincoln and Cortez," Defendant Cogbill subjected Plaintiff to unnecessary and wanton infliction of pain and injury. FAC ¶¶ 46, 47. Plaintiff further alleges:

> The acts and omissions complained of herein were done pursuant to customs and policies authorized, condoned, ratified and carried out by all Defendants that resulted in delayed and denied medical care for the purposes of saving money at the risk of inmates' health, and/or for inflicting physical and mental abuse on inmates as retribution in furtherance of a policy of misuse of power over inmates incarcerated in Sonoma County.

FAC ¶ 61. Viewed in the light most favorable to Plaintiff, these allegations sufficient state cognizable claims against Cogbill to survive a motion to dismiss.

The motion to dismiss the claims against Defendants Espino and Cogbill is denied. The Court grants Plaintiff leave to amend the complaint to specify that the County, Sheriff's Dept. and Cogbill retained CFMG as the jail's medical provider "despite actual or constructive knowledge of the inadequacy of its health services, including numerous avoidable injuries or inmate deaths;" "failed to sufficiently staff and equip its medical facilities;" and "enacted, enforced and/or ratified a custom, practice, or policy of declining to refer inmates for outside medical care in all but the most extreme circumstances." See Opp. at 17-18.

B.  Medical Treatment Claims Against County Defendants

Although Defendants did not bring a motion to dismiss the Sheriff's Department from the action, Defendants suggest that the Sheriff's Department is not a separate public entity that can be sued apart from the County of Sonoma. As Plaintiff points out, however, the Ninth Circuit has held that a sheriff's department, in its function of managing jails, is a separately suable public entity from the county for § 1983 actions. Streit v. County of Los Angeles, 236 F.3d 552, 565-66 (9th Cir. 2001). See also Ford v. County of Marin, 2001 WL 868877 at *5-8 (N.D.Cal. Jul 19, 2001)

8

(denying motion to dismiss on sovereign immunity grounds without prejudice).  Defendants did not address this issue in reply, and the Sheriff's Department remains in the action.

Defendants argue that because the medical services are contracted out to CFMG, the County Defendants should be dismissed from the claims alleging denial of proper medical services. Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  This standard may be met by "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Id. at 105-06.  Further, deliberate indifference exists when an official "knows of and disregards an excessive risk to inmate health or safety."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  "In determining deliberate indifference, we scrutinize the particular facts and look for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect. . . . While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice."  Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (claims of deliberate indifference by prison doctors).  A difference in medical opinion does not constitute deliberate indifference.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Plaintiff does not merely allege medical malpractice against CFMG and Dr. Luders (FAC, Eighth Cause of Action), but has sufficiently alleged facts to support a cognizable claim of deliberate indifference to serious medical needs against the County Defendants (FAC, Third Cause of Action).  FAC ¶¶ 23-40.  The motion to dismiss the claims against the County Defendants based on medical services is denied.

    C.    Dependent Adult Claims

Defendants contend that the Ninth Cause of Action for Reckless or Malicious Neglect of a Dependent Adult under the California Welfare and Institutions Code section 15657 should be dismissed because none of the Defendants are "care custodians" as defined by the Elder Abuse and Dependent Adult Civil Protection Act.  The Elder Abuse Act defines dependent adults as follows:

> (a) "Dependent adult" means any person between the ages of 18 and 64 years who resides in this state and who has physical or mental limitations that restrict his or her ability to carry out normal activities or to protect his or her rights, including, but not limited to,

9

>persons who have physical or developmental disabilities, or whose physical or mental abilities have diminished because of age.
>
>(b) "Dependent adult" includes any person between the ages of 18 and 64 years who is admitted as an inpatient to a 24-hour health facility, as defined in Sections 1250, 1250.2 [psychiatric health facility], and 1250.3 [chemical dependency recovery hospital] of the Health and Safety Code.

Cal. Welf & Inst. Code § 15610.23. The Welfare and Institutions Code, under which Plaintiff seeks relief, incorporates the definition of "health facility" set forth in California Health and Safety Code section 1250(j), which includes a correctional treatment center as defined below:

>As used in this chapter, "health facility" means any facility, place, or building that is organized, maintained, and operated for the diagnosis, care, prevention, and treatment of human illness, physical or mental, including convalescence and rehabilitation and including care during and after pregnancy, or for any one or more of these purposes, for one or more persons, to which the persons are admitted for a 24-hour stay or longer, and includes the following types:
>
>(j)(1) "Correctional treatment center" means a health facility operated by the Department of Corrections, the Department of the Youth Authority, or a county, city, or city and county law enforcement agency that, as determined by the state department, provides inpatient health services to that portion of the inmate population who do not require a general acute care level of basic services. This definition shall not apply to those areas of a law enforcement facility that houses inmates or wards that may be receiving outpatient services and are housed separately for reasons of improved access to health care, security, and protection. The health services provided by a correctional treatment center shall include, but are not limited to, all of the following basic services: physician and surgeon, psychiatrist, psychologist, nursing, pharmacy, and dietary. A correctional treatment center may provide the following services: laboratory, radiology, perinatal, and any other services approved by the state department.
>
>(2) Outpatient surgical care with anesthesia may be provided, if the correctional treatment center meets the same requirements as a surgical clinic licensed pursuant to Section 1204, with the exception of the requirement that patients remain less than 24 hours.
>
>(3) Correctional treatment centers shall maintain written service agreements with general acute care hospitals to provide for those inmate physical health needs that cannot be met by the correctional treatment center.
>
>(4) Physician and surgeon services shall be readily available in a correctional treatment center on a 24-hour basis.

Cal.Health & Safety Code § 1250(j).

10

1   One issue presented is whether the Sonoma County Main Adult Detention Facility (MADF)
2 qualifies as a "correctional treatment center" under Health and Safety Code section 1250(j)(1),
3 which, as set forth above, defines the term in part as "a health facility operated by the Department of
4 Corrections, the Department of the Youth Authority, or a county, city or city and county law
5 enforcement agency that, as determined by the state department [of Health Services], provides
6 inpatient health services to that portion of the inmate population who do not require a general acute
7 care level of basic services." The Health and Safety Code prohibits the operation of health facilities,
8 including correctional treatment centers, without a license. Health & Safety Code § 1253. See
9 Morris v. Harper, 94 Cal. App. 4th 52, 57 (2001). Plaintiff has not alleged whether MADF is so
10 licensed or otherwise qualifies as a "correctional treatment center." Thus, the Court instructs the
11 parties to meet and confer to determine whether MADF is licensed as a correction treatment center,
12 which fact may be determinative of whether Plaintiff is protected by the Elder Abuse Act.

13   Another issue presented is whether Plaintiff qualifies as a "dependent adult" under the
14 statute. The First Amended Complaint fails to allege that Plaintiff is protected as a "dependent
15 adult" under the Elder Abuse Act. At oral argument, Plaintiff's counsel contended that Plaintiff was
16 "admitted as an inpatient" under section 15610.23(b) of the Welfare and Institutions Code. Under
17 the present allegations, however, Defendants argue more persuasively that Plaintiff was admitted to
18 MADF as an inmate, not "admitted as an inpatient" as the statute defines "dependent adult" in
19 section 15610.23(b).

20   The County Defendants' motion to dismiss the Ninth Cause of Action is granted with leave
21 to amend upon meeting and conferring as to whether there are sufficient facts to state a claim under
22 the Elder Abuse Act.

23   D.   Common Law Negligence Claims Against the County

24   Defendants contend that the Tenth Cause of Action for negligent infliction of emotional
25 distress should be dismissed against the County because as a public entity, it is immune from
26 liability for common law negligence. Plaintiff points out, however that pursuant to California
27 Government Code section 815.2, "[a] public entity is liable for injury proximately caused by an act
28 or omission of an employee of the public entity within the scope of his employment if the act or

11

omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."

Defendants contend that Plaintiff must plead facts sufficient to show that the cause of action lies outside the breadth of public entity immunity, citing Lopez v. So. Cal. Rapid Transit Dist., 40 Cal. 3d 780, 795 (1985) ("because under the Tort Claims Act all governmental tort liability is based on statute, the general rule that statutory causes of action must be pleaded with particularity is applicable"). While Plaintiff has done so with respect to the statutory duty of the County under section 845.6 of the Government Code, discussed below, Plaintiff has not done so with respect to the common law negligence claim against the County. See Hoener v. County of Sonoma, 2004 WL 1811156 at *7 (N.D.Cal. Aug 05, 2004) (dismissing state negligence claims that were not brought pursuant to an authorizing statute or enactment).

The Tenth Cause of Action for negligent infliction of emotional distress is dismissed as to Sonoma County and the Sheriff's Department without leave to amend.

E.   Duplicative Claims

County Defendants contend that the Sixth and Seventh Causes of Action are duplicative: failure to summon medical care for an inmate pursuant to California Government Code section 845.6 (Sixth Cause of Action) and failure to discharge a mandatory duty pursuant to Government Code section 815.6 (Seventh Cause of Action).

Section 845.6 provides:

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care. Nothing in this section exonerates a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state from liability for injury proximately caused by malpractice or exonerates the public entity from its obligation to pay any judgment, compromise, or settlement that it is required to pay under subdivision (d) of Section 844.6.

Cal. Gov't Code § 845.6. The Seventh Cause of Action is brought under section 815.6, which

12

provides:

> Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

Cal. Gov't Code § 815.6. The Seventh Cause of Action alleges that section 845.6 "imposes such a mandatory duty." FAC ¶ 84. Plaintiff seeks leave to amend the Seventh Cause of Action to clarify that it alleges that the municipal defendants failed to satisfy their duty of providing basic medical services for MADF inmates, including (1) retaining CFMG "despite actual or constructive knowledge of the inadequacy of its health services, including numerous avoidable injuries or inmate deaths; (2) failing to sufficiently staff and equip its medical facilities; and (3) setting a policy of declining to refer inmates for outside medical care in all but the most extreme circumstances. Opp. at 23-24.

Defendants have demonstrated that the Sixth and Seventh Causes of Action state the same grounds for liability, namely the duty to take reasonable action to summon medical care pursuant to section 845.6. Thus, the motion to dismiss either one of these causes of action is granted, with leave to further amend the complaint to consolidate the allegations into one cause of action and to further allege that the County Defendants failed to satisfy their duty of providing basic medical services for MADF inmates.

**CONCLUSION**

For the reasons stated above, the County Defendants' motion to dismiss is granted in part without leave to amend as to the Tenth Cause of Action for negligent infliction of emotional distress against Sonoma County and the Sheriff's Department. The motion to dismiss is granted in part with leave to amend as to the Ninth Cause of Action for Reckless or Malicious Neglect of a Dependent Adult and the Sixth and Seventh Causes of Action. The motion to dismiss is denied in part without prejudice as to all other claims (docket no. 30). Plaintiff's motion to strike the state law exhaustion argument from Defendants' reply brief is granted without prejudice (docket no. 45). Plaintiff's Motion to Expand Record on County Defendants' Motion to Dismiss is denied (docket no. 49).

As the Court ordered at the case management conference, the County Defendants shall produce Plaintiff's D-file and Defendant CFMG shall produce Plaintiff's medical file by February 10, 2009. Plaintiff shall file an amended complaint by no later than March 24, 2009.

A further case management conference is set for June 30, 2009 at 10:00 a.m. The parties shall file a joint case management conference statement by June 23, 2009.

**IT IS SO ORDERED.**

Dated: February 10, 2009

ELIZABETH D. LAPORTE
United States Magistrate Judge