1
2
3
4
5

IN THE UNITED STATES DISTRICT COURT

6

FOR THE NORTHERN DISTRICT OF CALIFORNIA

7
8  ERIC JAMES BAKER,

9          Plaintiff,                          No. 08-03433  EDL

10     v.                                       **ORDER GRANTING IN PART AND
                                                DENYING IN PART COUNTY
11  COUNTY OF SONOMA,                           DEFENDANTS' MOTION FOR
                                                SUMMARY JUDGMENT; DENYING
12          Defendants.                         ADMINISTRATIVE MOTION TO
    _____/         CONSIDER PLAINTIFF'S EXPERT
13                                              REPORTS**

14

15          Defendants County of Sonoma, Sonoma County Sheriff's Department, Bill Cogbill, Lewis

16  Lincoln, Daniel Cortez and Eduardo Espino (the "County Defendants") have filed a motion for

17  partial summary judgment of this action arising from injuries sustained by Plaintiff Eric James Baker

18  while he was in custody at the Sonoma County Main Adult Detention Facility ("MADF").

19  Specifically, the County Defendants move for summary adjudication of Plaintiff's § 1983/Excessive

    Force and Failure to Intervene to Prevent Excessive Force against the County and Sheriff Cogbill
20
    and § 1983/Deliberate Indifference to Serious Medical Needs against the County, Sheriff Cogbill
21
    and Eduardo Espino on the basis that no evidence supports these claims.  The County Defendants
22
    also move for summary adjudication of Plaintiff's Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and
23
    Eleventh state law claims for failure to exhaust administrative remedies, for lack of evidence, and/or
24
    pursuant to the doctrine of qualified immunity.  For the following reasons, the Court GRANTS IN
25
    PART and DENIES IN PART the County Defendants' Motion for Summary Judgment.  The Court
26
    DENIES Plaintiff's Administrative Motion Requesting that the Court Consider Plaintiff's Expert
27
    Reports In Opposition.
28
    **I.     OBJECTIONS TO EVIDENCE**

            As a threshold matter, the County Defendants have filed Objections to Evidence, challenging

much of Plaintiff's evidence filed in opposition to their motion. Plaintiff Opposed the County Defendants' Objections, and has filed additional documents remedying certain deficiencies. The Court rules on the evidentiary objections as follows:

1.      ¶ 3 of the Wittels Declaration and Exhibit A: Paragraph 3 of the Wittels Declaration attaches Exhibit A, which is a chronology of events prepared by Plaintiff's counsel with citations to other evidence also submitted in opposition to the motion. Plaintiff's counsel contends that this document is an admissible summary of evidence that may be useful for the trier of fact. However, Plaintiff's counsel does not have personal knowledge of facts set forth in Exhibit A, it is hearsay, and it is unnecessary as a summary of voluminous evidence where the evidence it relies on is not overly voluminous. Therefore, the County Defendants' objection to Exhibit A is SUSTAINED.

2.      Exhibit B: Exhibit B is a declaration of Plaintiff Baker dated February 18, 2009, an unsigned version of which was previously submitted in opposition to a Motion to Dismiss on February 18, 2009. The Court previously refused to consider the unsigned version in connection with the motion to dismiss. See Dkt. No. 59. The County Defendants object to this testimony to the extent it contradicts his deposition testimony, but do not explain where or how it is contradictory. Additionally, the County Defendants rely on cases where declarations that contradict prior deposition testimony, submitted to defeat summary judgment, has been disregarded as sham. Here, the declaration was signed *before* Plaintiff's deposition, and the evidence does not appear to be directly contradictory, but for a few discrepancies in dates and the timing of events. Therefore, the County Defendants' objection is OVERRULED.

3.      Exhibit C: Exhibit C is a "Healthcare Services Request Form" dated December 16, 2009, wherein Plaintiff seeks treatment for facial pain. The County Defendants argue that the document is unauthenticated and seeks to contradict sworn testimony. The Court need not rule on this objection because it is irrelevant to the Court's determination of the issues before it.

4.      Exhibit D: Exhibit D originally contained portions of an "uncertified rough draft" of the deposition transcript of Mr. Baker. No deposition cover sheet indicating the name of the deponent and the action or reporter certification were included. The County Defendants argued that the document was unauthenticated hearsay evidence that should not be considered. Pursuant to Orr v.

Bank of America, NT & SA, 285 F.3d 764, 774 (9th Cir. 2002):

> A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent. See Fed.R.Evid. 901(b); Fed.R.Civ.P. 56(e) & 30(f)(1); Beyene, 854 F.2d at 1182; Pavone v. Citicorp Credit Servs., Inc., 60 F.Supp.2d 1040, 1045(S.D.Cal.1997) (excluding a deposition for failure to submit a signed certification from the reporter). Ordinarily, this would have to be accomplished by attaching the cover page of the deposition and the reporter's certification to every deposition extract submitted. It is insufficient for a party to submit, without more, an affidavit from her counsel identifying the names of the deponent, the reporter, and the action and stating that the deposition is a "true and correct copy." See Beyene, 854 F.2d at 1182. Such an affidavit lacks foundation even if the affiant-counsel were present at the deposition. See id.; Pavone, 60 F.Supp.2d at 1045.

In response to the County Defendants' objections, Plaintiff filed a Declaration of Thomas Marc Litton attaching large portions of a properly authenticated Baker Deposition transcript. Though untimely, this submission cured the deficiency of the Baker Deposition. The County Defendants' objection to the original Exhibit D is OVERRULED in light of the newly-filed Exhibit A to the Litton Declaration.

5.      Exhibit E:  Exhibit E is a handwritten document dated January 24, 2008 which purports to be a letter to the NAACP incorporating Plaintiff's contemporaneously kept account of events.  See Wittels Decl. ¶ 7.  According to the County Defendants, Mr. Baker could not authenticate the document at his deposition.  See Freeman Reply Decl. ¶ 3, Ex. A (letter following deposition requesting original journal or confirmation that the copy received was complete).  Plaintiff's deposition testimony shows that the letter was written on January 24, 2008 and discussed the events beginning with his booking on September 8, 2007.  It appears that the chronology in the letter was based on a journal recorded on a daily basis during Plaintiff's incarceration, but he does not expressly state this, and no journal has been submitted as evidence.  See Litton Decl. Ex. A (Baker Depo.) at 170-171.  Defendants object to this document as unauthenticated and contradictory to prior testimony.  The document is unauthenticated, and most of the information contained in Exhibit E is also contained in Mr. Baker's declaration attached as Exhibit B and his deposition attached as Litton Decl. Ex. A, as well as other documentary evidence which the Court will consider, so it is not prejudicial to Plaintiff to exclude it as unauthenticated.  Therefore, the County Defendants' objection

is SUSTAINED.

6.      Exhibit Y: Exhibit Y is an Affidavit of Dr. Michael Scherl, Plaintiff's medical expert in this case.  The County Defendants objected to this document in its original form on the basis that the affidavit does not contain a statement of competency, fails to establish personal knowledge of some of the statements therein and others are irrelevant to the present motion, and is not made under penalty of perjury.  The declaration as originally filed was not made under penalty of perjury, and on this basis could have been excluded.  However, at oral argument the Court gave Plaintiff one week to cure the deficiency, and Plaintiff has since filed an identical affidavit sworn under penalty of perjury.  The County Defendants' objection is therefore  OVERRULED.

7.      Exhibit CC:  Exhibit CC is a one-page document entitled " Medical Autonomy" which Plaintiff claims is part of the policy applicable to MADF and was produced by the County in the George case also before this Court.  See Wittels Decl. ¶ 30.  However, nothing in this document indicates what it is or how it relates to inmate care at the MADF specifically.  The County Defendants object to it on grounds of competency, lack of personal knowledge, hearsay, and authentication/foundation.  Plaintiff has not sufficiently established a basis for admitting this evidence in this case.  The objection is SUSTAINED.

8.      Exhibits DD, EE, FF, GG, HH, JJ, KK:  These exhibits contain documents and evidence relating to other similar cases against some or all of these defendants relating to failure to provide adequate medical care to prisoners (George and Duarte).  Plaintiff contends that the evidence complies with Federal Rule of Evidence 404(b) in that it shows a custom or pattern of inmate neglect and delays or denials of adequate care, and is relevant to at least the municipal liability claims.  The County Defendants challenge this evidence as irrelevant, hearsay, lacking authentication/foundation, and an improper attempt to include evidence of alleged similar acts.  The County Defendants cite Amatucci v. Delaware & Hudson Ry. Co., 745 F.2d 180 (C.A.N.Y. 1984) in support of this objection.  However, Amatucci was not a municipal liability case where a policy or practice of similar acts might be relevant to support the claims, so this case is inapposite and unhelpful.  With respect to the deposition transcripts and declarations, Plaintiff contends that this evidence was

4

developed in other similar cases against the same governmental defendants, where the defendants had an opportunity to cross-examine on sufficiently similar issues.  Plaintiff does not seek to use this testimony against the individual officers.  See Opposition to Objections to Evidence at n.6.  This evidence is relevant for the limited purpose of establishing a custom or pattern regarding medical treatment of prisoners and the County Defendants have not adequately shown why it should be excluded. Therefore, their objections to this evidence are OVERRULED.

In addition to these evidentiary objections, the County Defendants challenge some factual assertions in Plaintiff's Opposition as unsupported by any evidence.  See Opp. at 5:25-26, 7:18-25, 16:18-21, 16:22-24, and 33:14-16.  These objections are directed to the adequacy of Plaintiff's showing and are addressed in the following Order.

**II.**      **REQUEST FOR RULE 56(f) CONTINUANCE AND ADMINISTRATIVE MOTION TO CONSIDER PLAINTIFF'S EXPERT REPORTS**

Plaintiff's Opposition and the Wittels Declaration in support argued that the Court should grant a continuance pursuant to Rule 56(f) to allow Plaintiff additional time to obtain expert discovery needed to oppose the motion.  Plaintiff originally argued that the expert discovery cutoff was not until February 15, 2010, and at the time his opposition was filed he was in the process of engaging experts on "jail policy and management and the administration of health care services." Wittels Decl. ¶ 39.  Plaintiff stated that he would present expert testimony  "detailing the County and Sheriff Cogbill's policy making and operational failures from the perspective of a qualified professional."  Id. ¶ 40.  He asserted that this would include testimony on the "inadequacies in the County's use of force policy," the County's "deficient supervision, training and discipline of its personnel" (id. ¶ 41), "specific deficiencies in medical policy that contributed to Mr. Baker's pain and suffering and exacerbation of his injuries," (id. ¶ 42) and the County and Sheriff's Department's "deficient screening, supervision, training, and discipline of their personnel" (id. ¶ 43).  Plaintiff contended that this expert witness discovery would be essential to establishing the County and Sheriff's Department municipal liability under Monell and Sheriff Cogbill's individual liability.  Id. ¶ 44.

The County Defendants opposed the Rule 56(f) request in their Reply, arguing that Plaintiff had not shown how this additional evidence would preclude summary judgment, failed to establish diligence in pursuing discovery, and did not constitute a formal Rule 56(f) request. The County Defendants pointed out that Plaintiff had been in possession of their motion for summary judgment since December 10, 2009, and received a continuance of time to oppose the motion based on a pending motion to compel (which was denied in its entirety based on Plaintiff's failure to meet and confer pursuant to Court order). At oral argument, the Court stated that it would deny Plaintiff's Rule 56(f) continuance and rule on the merits of the summary judgment motion.

Following oral argument and before this order on the summary judgment motion issued, the parties exchanged expert disclosures. On March 2, 2010, Plaintiff filed an administrative motion requesting that the Court consider Plaintiff's expert reports in opposition to the County Defendants' summary judgment motion. The three proffered expert reports consist of: (1) February 19, 2010 Report of Dr. Michael Scherl, M.D.: medical expert report; (2) February 19, 2010 Report of Bruce Bikle, Associate Professor, Division of Criminal Justice, California State University-Sacramento; and (3) February 18, 2010 Report of Daniel B. Vasquez. The request was made one month after the February 2, 2010 hearing on the motion, and two weeks after the deadline for expert witness disclosures and after Plaintiff provided the reports to Defendants.

Plaintiff contends that the expert reports should be considered in connection with the County Defendants' summary judgment motion because they "address and respond to the Jail's arguments as to its use of force policies and medical procedures," and support Plaintiff's position that fact questions on these topics remain. Admin. Motion at 2. Plaintiff contends that the defendants will not be prejudiced by the Court's consideration of the reports because they had notice of them in Plaintiff's opposition brief, which vaguely referenced some forthcoming expert reports. However, Plaintiff does not explain why the reports were not submitted with his original opposition to the summary judgment, or at least immediately after their disclosure to the defendants.

The County Defendants oppose Plaintiff's administrative motion on the basis that the Court already denied Plaintiff's request for a Rule 56(f) continuance to wait for the expert reports, and the

motion is untimely and improperly brought as an "administrative motion" under Local Rule 7-11. The County Defendants point out that Plaintiff has already been granted several continuances with respect to this motion, and prepared the expert reports following the hearing on the summary judgment motion with the benefit of the Court's thoughts at the hearing. The County Defendants correctly note that none of the cases cited by Plaintiff allowed submission of additional expert reports after hearing on a motion for summary judgment. They also point out that the Court did not grant Plaintiff's Rule 56(f) request during the hearing on the motion, and indicated that it would proceed to the merits without waiting for additional expert reports. Finally, the County Defendants argue that, before expert testimony may be admitted into evidence, the Court must determine it to be both relevant and reliable under FRE 702 and 705. However, the County Defendants do not challenge the relevance of the reports, and do not specifically raise any argument regarding unreliability.

The Court DENIES Plaintiff's administrative motion for the Court to consider his late filed expert reports in opposition to the summary judgment motion. First, having reviewed the proffered expert reports, they would not change the Court's substantive analysis or outcome even if they were considered. As discussed above, the Court will consider the affidavit of Dr. Scherl (cured as to defect by being signed under penalty of perjury) as it was timely filed in connection with Plaintiff's opposition and therefore there is no prejudice to Plaintiff in not considering the later-filed report. With respect to the Vasquez and Bikle reports, and as discussed below, the Court finds that there is a triable issue of fact as to the County's liability with respect to MADF's inmate medical care policy based on other evidence properly submitted in Plaintiff's opposition, and the Court need not rely on the untimely expert reports to find for Plaintiff on that issue.

With respect to the County's policy regarding use of force, the expert reports would be of no help to Plaintiff even if considered because the undisputed facts show that Plaintiff complains of one isolated incident involving force. As a matter of law, a single unratified incident cannot give rise to liability based on a policy, practice or custom. See Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct

7

1   has become a traditional method of carrying out policy;" but noting that liability based on

2   ratification or delegation can be based on a single incident).  The expert reports do not opine on the

3   issues of ratification or delegation regarding use of force and therefore also would not support

4   municipal liability or liability of Sheriff Cogbill on these alternative grounds.

5          For example, the Vasquez Report notes that "the sheriff did not have any detail regarding his

6   department's Use of Force policy/procedure."  See Vasquez Report at 8; id. at n.4 (noting that the

7   law on use of force requires staff to provide medical examination and investigate the incident but

8   this was not done as no personnel was disciplined and there is no record of a true medical

9   examination (other evidence suggests that this is because Mr. Baker declined to be examined)).  The

10  Bikle Report states that "Jail staff was remiss in its duty and failed to follow its own use of force

11  policy with regard to the provision of medical care for Mr. Baker after he was subdued and the

12  incident was over.  Medical staff should have been called to examine Mr. Baker immediately after

13  the incident or at least after he expressed pain and complaint about his injuries.  The record

14  demonstrates this was not done in a reasonable time."  Bikle Report at 2.  Dr. Bikle also opines that

15  the "jail also was required under the use of force policy to do a follow up report on the use of force

16  including a supervisor's report" and he has not seen such a report.  Id.

17         At best, this testimony indicates that the County Defendants had a force policy in place, and

18  this policy required them to perform a medical examination on Plaintiff after the incident, and to

19  investigate the incident, but this did not occur.  There is a disputed fact question as to when and the

20  extent of Plaintiff's medical examination after the incident, and there is no dispute that MADF did

21  not perform further investigation into the use of force against Mr. Baker that resulted in anyone

22  getting disciplined.  However, looked at in the light most favorable to Plaintiff, this failure to follow

23  policy in a single isolated instance is not a custom or practice so pervasive as to give rise to

24  municipal liability, or supervisory liability of Sheriff Cogbill in his individual capacity.

25         Further, the Court previously determined that a Rule 56(f) continuance was not warranted

26  because Plaintiff was not diligent in obtaining the expert discovery he claimed he needed in time to

27  oppose the motion, despite several continuances in his favor, and informal Plaintiff's 56(f) request

28  did not adequately explain what the expert testimony would add to his opposition arguments.  The

8

fact that the Court did not issue a ruling on the summary judgment motion before the expert

disclosure deadline does not change this conclusion. It would be prejudicial to consider the

evidence now, without allowing the County Defendants a chance to file a sur-reply in support of

their summary judgment motion addressing the issues raised in the late-filed expert reports, and

allowing this additional briefing would likely necessitate continuing the May 10, 2010 trial date and

adversely impact efficient case management.

**III.    BACKGROUND**

   **A.    Plaintiff's History While in MADF**

   On or about September 8, 2007, law enforcement officials of the County and Sheriff's

Department took Plaintiff into custody at the Sonoma County Main Adult Detention Facility

("MADF"). Wittels Decl. Ex. B (Baker Decl.) ¶ 2. Mr. Baker had previously been incarcerated at

MADF. Toby Decl. ¶ 3; Declaration of Marc Litton in Support of Plaintiff's Opposition ("Litton

Decl.") Ex. A (Baker Depo.) at 29-30. Following the booking process, while escorting Plaintiff to

his cell from the "search booth," Defendant Corrections Officer Lewis Lincoln handcuffed

Plaintiff's left wrist tightly, and when Plaintiff complained of the pain, he was told to "shut up."

Wittels Decl. Ex. B ¶¶ 3-4; Freeman Decl. Ex. A at 89. After Plaintiff complained again, Defendant

Lincoln slammed Plaintiff's head into a cement wall and told him to "shut up." Wittels Decl. Ex. B

¶ 4. Defendant Lincoln and Defendant Cortez took Plaintiff toward his cell, during which time he

continued to complain and the officers again told him to "shut up" and slammed his head against a

cement block wall. Id. ¶ 5. They took Plaintiff to his cell and forced him onto a bunk bed by lifting

his wrists behind his back and jammed his face into the wall, scraping the skin off Plaintiff's shins

against the metal bed. Id. ¶ 6. During this time, his face was pressed against a wall and he

experienced "unbearable pain" and saw spots. Id. at ¶ 7; but see Toby Decl. Ex. A at COS00392

(Incident Report) (summarizing incident and noting that Baker had been resistive and tried to pull

away from the officer's control hold, and was therefore placed against a door for better control using

a "reverse rear wrist lock" and then all use of force stopped). Defendant Officers Lincoln and

9

Cortez removed the handcuffs and left Plaintiff in the cell. Id. ¶ 8.[1] Immediately thereafter, according to the County Defendants, Lincoln brought a medic to Plaintiff's cell and asked if he was injured, and Plaintiff stated that his hand was sore but declined medical care. Freeman Decl. Ex. D (Lincoln Depo.) at 75, 89-90; Wittels Decl. Ex. F; Toby Decl. Ex. A at COS00392. Plaintiff's Declaration is silent on this point, and his deposition states that he did not request medical attention and does not "think" he was offered medical attention immediately after the incident. Litton Decl. Ex. A (Baker Depo.) at 117, 120.

As a result of these events, Plaintiff suffered facial pain, swelling and bruising, making it difficult to open his mouth or right eye or to yawn, eat, breathe, and his hearing, eyesight and balance were also affected. Wittels Decl. Ex. B ¶ 9. Plaintiff claims that for the next three days, he was left "curled up in severe pain in a cold cell without medical attention or assistance" and repeatedly asked the guards for aspirin and to see a doctor, as well as for medical forms and inmate grievance forms" but his requests were refused or denied without explanation. Id. ¶ 11. However, other evidence shows that Plaintiff made a court appearance on September 11, 2007. See Request for Judicial Notice Ex. A (Court Disposition Report). Plaintiff also claims that he was refused medical attention and medication until September 15, 2007. Wittels Decl. Ex. B ¶¶ 13-14. However, CFMG records show that he was seen by medical personnel on September 11 and 14, and the records mention "knee/back/face," but are otherwise illegible. Dagey Decl. Ex. A at CFMG00107; Wittels Decl. Ex. L at 1.

On or about September 17, Plaintiff began explaining the injuries to his face to a nurse, but an officer shut the slot so he was unable to complete his explanation. Wittels Decl. Ex. B ¶ 15. Also on this date, Plaintiff filled out a "Jail Readmission Health Appraisal" where he complained of pain in his "back knee, left wrist, rt check, jaw, rt temple, neck. When booked they shoved me into wall. My face is broken. Nobody seems to listen to my request slips. Constant black eye bruised under."

---

[1]The details of the facts surrounding Mr. Baker's walk from booking to his cell, including whether or not Plaintiff was being resistive and whether or not Lincoln and Cortez used excessive force, are in dispute. These individual defendants have not moved for summary judgment on the claims against them. Plaintiff's version of the facts are included in this summary for the sake of completeness, though some of these facts are disputed. For additional detail regarding Plaintiff's version of the facts relating to Officer Lincoln and Cortez's use of force, see Litton Decl. Ex. A at 107-120.

Wittels Decl. Ex. G.  Also on this date, Plaintiff filled out an "Inmate Health Services Request Form" that indicated that, since September 8, he had experienced "back and joint stiffness a lot of discomfort. maproxin isn't working well. Please try something else!" A notation on this form in other handwriting states, "Pushed against wall on the arrest. (Facial xray)."  Wittels Decl. Ex. H.  On or about September 20, 2007, an individual named Harford examined Plaintiff and ordered x-rays. Wittels Decl. Ex. B ¶ 16; Dagey Decl. Ex. A at CFMG00107; Wittels Decl. Ex. R (Luders Depo.) at 13-15.  On or about September 23,  Defendant Espino refused to provide Plaintiff with a grievance form to complain about the administration of pain medication.  Wittels Decl. Ex. B ¶ 17.  On or about September 24, Plaintiff filled out an Inmate Health Services Request Form stating, "I have been patient no use. I want to see the grievance officer, due to denial of medical care all staff included.  17 days broken bones (PAIN)."  Wittels Decl. Ex. H.

On or about September 25, 2007, Plaintiff was taken for x-rays, and the diagnostic report indicated no observable fractures but that further evaluation with computed tomography should be determined clinically.  Wittels Decl. Ex. B ¶ 18; Dagey Decl. Ex. A at CFMG00074; Wittels Decl. Ex. M.  Dr. Luders, working for Defendant CFMG on contract to the County and Sheriff's Department, informed Plaintiff that the x-rays were normal.  Wittels Decl. Ex. B ¶ 18; see also Ex. K (x-ray was "unremarkable"); Litton Decl. Ex. A at 175-76.  Pain medication was stopped on or about September 28.  Wittels Decl. Ex. B ¶ 20.  Plaintiff filed a request, stating that "Pain meds aren't strong enough. Wheres off before other ones administered. Cut off Oltreum all day. Headache. My neck, facial bones, around jaw, temple, teeth, rt. top back since booking on 9th Sept."  Wittels Decl. Ex. H; Dagley Decl. Ex. A at CFMG000124.  Notes in Plaintiff's medical file indicate that he continued to complain of facial pain and lack of medication in October, though on October 2 he stated, "Thank you. The meds are ok."  Wittels Decl. Ex. K, H, K.

Plaintiff continued to experience headaches, numbness in his teeth, difficulty breathing and eating and sleeping, blurred vision and dizziness, loss of balance and depth perception, hot and cold flashes and night sweats.  Wittels Decl. Ex. B ¶ 21, 24.  Plaintiff claims that unnamed jail personnel denied or only erratically provided Plaintiff his pain medications throughout the time of his incarceration.  Id. ¶¶ 25, 32.

On or about October 3, 2007, an individual named "Harford" informed Plaintiff that his x-rays showed the facial plate in an abnormal position, restarted Plaintiff's pain medications with increased dosage, and later ordered more x-rays and CT scans. Id. ¶ 23; Wittels Decl. Ex. K. On October 7, Plaintiff submitted another request, noting that "My Bones in face are moving upward toward eye." Wittels Decl. Ex. H.

On October 8, Plaintiff missed receiving his mediation because he was in court. Wittels Decl. Ex B ¶ 26. Upon return, Officer Espino refused to get the missed dose or notify the nurse and refused to administer aspirin. Id. ¶ 26; but see Litton Decl. Ex. A (Baker Depo.) at 134-35 (dating this incident in November or December 2007). Thereafter, Plaintiff pushed the "emergency button" and the guards chastised him, but thereafter kicked a piece of paper containing Tylenol under his door. Id. ¶ 27; see also Wittels Ex. Z (Plaintiff "advised not to press his e-call button unless he has an actual emergency"). On or about October 9, Plaintiff again missed his medication because he was at a probation interview, and Officer Espino and an unnamed officer did not help him obtain medication. Wittels Decl. Ex B ¶ 28; Freeman Decl. Ex. A at 135-40; see generally Litton Decl. Ex. A at 134-40.

On or about October 11, Plaintiff was taken to the hospital for CT scans, after which he was diagnosed with a "mildly depressed, comminuted fracture of the right zygomatic arch" and no orbital fractures. Dagley Decl. Ex. A at CFMG00075-76. Also on October 11, Plaintiff submitted a request noting that, "They have stopped pain meds again, yes I will grievance this. My face is still or jaw broken. What the hell." On the 15th he filed another request, stating, "I'm the one with swollen, bruised face, remember!....it's the same pain. 4th time taken off meds. My head hurts!" He continued to file such requests throughout October. Wittels Decl. Ex. H.

On or about October 15, Plaintiff saw a dentist, Dr. Brown, who referred him to an oral surgeon, Dr. Tiernan. Wittels Decl. Ex. B ¶ 29. The following day Dr. Luders informed Plaintiff that the CT scans were normal and diagnosed an infection. Wittels Decl. Ex. B ¶ 30. On November 1, Dr. Tiernan diagnosed a right zygomatic fracture based on the CT scans. Id. ¶ 31; Dagley Decl. Ex. A at CFMG00076; Wittels Decl. Ex. P. With respect to treatment, Dr. Tiernan stated that, "[t[he problem is that he is six weeks out. To repair the area would require osteotomizing the zygoma

12

and/or cut the coronoid process off. I explained this process to the patient and he has elected to do nothing at this time." Id; see also Litton Decl. Ex. A at 183.

Following this diagnosis, Plaintiff continued to complain about pain and request medication. See generally Wittels Decl. Ex. H. On December 16, 2007, Plaintiff filed a formal grievance requesting continued medication. Wittels Decl. Ex. B ¶ 32; Ex. J.[2] A response was provided on December 19, stating that: "At the last medical provider visit on November 29, 2007, the physician did not renew Mr. Baker's medication. As Mr. Baker feels that his medical condition need for pain medication has not subsided, he may certainly make an additional request by submitting a sick call slip." Id. This grievance was forwarded to CFMG on December 19 and response requested by December 24. Id. On December 27, a MADF document summarizing Plaintiff's treatment to date stated that, on October 4, Plaintiff "was not made an emergence because he was in no respiratory distress, ate well, and functioned appropriately." Wittels Ex. Q. Following this, Plaintiff continued to complain of pain and request continued medication. See generally Wittels Decl. Ex. I.

After his release in May 2008, Plaintiff filed this complaint.

**B.    MADF Policies**

The MADF is operated by the County of Sonoma. The "MADF Detention Policy and Procedure Manual" sets forth the policies and procedures that correctional deputies must follow when interacting with inmates at MADF. Toby Decl. ¶ 6. Upon arrival at MADF, inmates receive an "Inmate Handbook" describing the rules and procedures they must follow while incarcerated at MADF. Id. ¶ 4, Ex. B. The evidence is silent as to whether Plaintiff received an inmate handbook while at MADF. The inmates housed at MADF receive medical care from California Forensic Medical Group ("CFMG"), an outside vendor that contracts with the County of Sonoma. Id. ¶ 2. Correctional officers do not administer medical care or prescribed medications to inmates, but may provide inmates with over the counter aids such as Tylenol every six hours. Id; see also Wittels Decl. Ex. X (Espino Depo.) at 24-25.

Inmates may file grievances pursuant to the procedure in the Inmate Handbook. See Toby

---

[2]Plaintiff claims that he filed a second grievance form, but no record of any other grievance form has been located, and Plaintiff does not recall the details of when the second grievance was filed. See Freeman Decl. Ex. A at 140-42.

Decl. Ex. B at 7. This requires inmates to file an Inmate Grievance Form within three days of the date of the complaint and submitting it to a shift officer. Id. The grievance must be acted upon within one day, and if it is denied the inmate has two days to escalate the grievance to "Step II". Thereafter, a sergeant has two days to review the response. Id. If there is still no resolution, the inmate completes "Step III" and submits the form to a grievance officer for an appeal. Id. Thereafter, the inmate may pursue the matter in court. Id. Plaintiff has indicated that he is generally familiar with the grievance process. See Freeman Decl. Ex. A (Baker Depo.) at 42.

## IV.    LEGAL STANDARD

Summary judgment shall be granted if "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). Material facts are those which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial. Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Id. If the moving party meets its initial burden, the opposing party "may not rely merely on allegations or denials in its own pleading;" rather, it must set forth "specific facts showing a genuine issue for trial." See Fed. R. Civ. P. 56(e)(2); Anderson, 477 U.S. at 250. If the

1   nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to

2   judgment as a matter of law." Celotex, 477 U.S. at 323.

3

4   **V.      DISCUSSION**

5          **A.       Municipal Liability Claims Against the County of Sonoma And Sheriff Cogbill[3]**

6          The County Defendants first contend that all of Plaintiff's § 1983 claims against the County

7   and Sheriff Cogbill in his official capacity as policymaker are barred because Plaintiff has presented

8   no evidence of an unconstitutional policy as required by Monell v. Dept. of Social Services, 436

9   U.S. 658, 691 (1978).  Generally, a city or county may not be held vicariously liable for the

10  unconstitutional acts of its employees under the theory of respondeat superior.  Board of the County

11  Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997); Monell, 436 U.S. at 691.

12  Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or

13  by those whose edicts or acts may fairly be said to represent official policy, inflicts the injuries that

14  the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694.  Alternatively,

15  liability may be based on a policy, practice or custom of omission amounting to deliberate

16  indifference."  See Gibson v. City of Washoe, Nevada, 290 F.3d 1175 (9th Cir. 2002); City of

17  Canton, Ohio v. Harris, 489 U.S. 378, 387 (1989).

18         There are three ways to show an affirmative policy or practice of a municipality:  (1) by

19  showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of

20  the local government entity;" (2) "by showing that the decision-making official was, as a matter of

21  state law, a final policymaking authority whose edicts or acts may fairly be said to represent official

22  policy in the area of decision;" or (3) "by showing that an official with final policymaking authority

23  either delegated that authority to, or ratified the decision of, a subordinate." Menotti v. City of

24  Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting Ulrich v. City and County of San Francisco,

25

26  ────────────────────
            [3]The term "County of Sonoma" and "County" are intended to incorporate another defendant, the
27  Sonoma County Sheriff's Department, because the two parties are referred to collectively in the County
    Defendants' motion and the same arguments are made on behalf of both parties.  See Motion at n. 1.
28  Though the Court has previously held that they are two separate entities for purposes of this lawsuit,
    Plaintiff concedes that the two entities can move together for purposes of this motion.  See 2/10/09
    Order Granting in Part And Denying In Part Motion to Dismiss at 8.

308 F.3d 968, 984 (9th Cir. 2002)).

2      To establish a policy of omission, Plaintiff must show that "the municipality's deliberate

3  indifference led to its omission and that the omission caused the employee to commit the

4  constitutional violation." Gibson, 290 F.3d at 1186. Plaintiff can establish deliberate indifference

5  only by showing that "the municipality was on actual or constructive notice that its omissions would

6  likely result in a constitutional violation." Id. The County Defendants point out that an "improper

7  custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of

8  sufficient duration, frequency and consistency that the conduct has become a traditional method for

9  carrying out policy." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996). Plaintiff contends that

10  there is sufficient evidence of both types of municipal policies (affirmative acts and omissions) to

11  establish liability of the County in this case.

12              **1.      Use of Force**

13      Plaintiff argues that the County "failed to implement appropriate policies to prevent

14  Plaintiff's assault by the guards who used unnecessary force to injure plaintiff," as evidenced by the

15  "failure to intervene to prevent Plaintiffs beating and to discipline the guards." Opp. at 16 (stating

16  that Plaintiff "cried for help multiple times within earshot of everyone in the booking area –

17  including the Jail Captain's"). Plaintiff also contends that, despite Plaintiff's numerous complaints

18  about pain following his booking, there is no evidence that disciplinary action was taken against the

19  officers even after he was diagnosed with a broken bone. See Wittels Decl. Ex. F (Incident Report)

20  (reporting the incident as "For Info Only" and not indicating any follow-up action). Plaintiff also

21  points to Sheriff Cogbill's deposition testimony  that he did not believe that Mr. Baker's injury was

22  caused by being mishandled by any deputy in the facility. Wittels Decl. Ex. T at 60. Plaintiff also

23  points to the "use of force" policy itself, which he contends vests discretion with the guards on when

24  and how to use force, is silent on intervention to prevent unwarranted use of force, and does not set

25  forth any procedures to be followed. See Wittels Decl. Ex. AA.

26      With respect to use of force and failure to intervene to prevent excessive force, the County

27  Defendants respond that these contentions are not supported by admissible evidence because the

28  evidence relied on is double hearsay and does not show that anyone – including the Captain –

1    actually heard anything and failed to intervene. Reply at 5. Reference to one isolated incident is

2    insufficient to show a policy of failure to intervene or prevent the use of excessive force. Further,

3    the "use of force" policy itself does not support Plaintiff's position because it states a policy to "only

4    use that amount of force that reasonably appears necessary." Wittels Decl. Ex. AA. Even viewing

5    these facts in the light most favorable to Plaintiff, Plaintiff does not raise a triable issue of fact of an

6    unconstitutional policy or that, "the municipality's deliberate indifference led to its omission and

7    that the omission caused the employee to commit the constitutional violation." Gibson, 290 F.3d at

8    1186. At most, it shows that the County did not believe the officers had done anything wrong in

9    their handing of Plaintiff during booking because they followed the established use of force policy,

10   which is insufficient for Monell liability. Whether or not the individual officers did, in fact, use

11   excessive force in violation of the policy and the Constitution on this one occasion is a disputed

12   question of fact and therefore not raised by the County Defendants in this Motion.

13        For the foregoing reasons, summary adjudication of Plaintiff's claims against the County

14   and Sheriff Cogbill in his official capacity based on the County's use of force policy is GRANTED.

15                    **2.    Adequacy of Medical Treatment**

16        Plaintiff next contends that the County (and therefore Sheriff Cogbill in his official capacity)

17   made affirmative policies and failed to implement appropriate policies and procedures to ensure that

18   Plaintiff received treatment that was not deliberately indifferent to his serious medical needs.

19   Plaintiff first relies on the County's "medical autonomy policy," (purportedly contained in an

20   unauthenticated, unclear document which Plaintiff contends relegates all medical decision-making

21   and judgments to CFMG) arguing that the County failed to provide sufficient oversight of CFMG's

22   medical program. Opp. at 18. Specifically, Plaintiff cites Wittels Decl. Ex. CC, which is a one page

23   document entitled "Medical Autonomy" stating that, "Medical decisions are the responsibility of

24   CFMG medical providers." However, as ruled above, this document is inadmissible.

25        Plaintiff also argues that the County was or should have been aware of the "longstanding

26   inadequacy of inmate health services at MADF," including a pattern of avoidable injuries and

27   deaths. Plaintiff points to evidence of other earlier and concurrent cases alleging inadequate

28   prisoner care. See Wittels Decl. FF (autopsy report from George case also before this Court

                                            17

indicating that death was preventable); KK (materials relating to <u>Duarte v. County of Sonoma</u> case docketed as 05-3195-MHP (N.D. Cal.)); HH (deposition of plaintiff in other case discussing substandard medical care at MADF). Plaintiff further contends that there was a general atmosphere of hostility and mistrust toward inmates; Ex. II (newspaper articles regarding inmate deaths in Sonoma County).  For example, officers "chastised" inmates for using the emergency call button and failed to take these emergency calls sufficiently seriously, indicating a lack of training and supervision. <u>See</u> Wittels Decl. Ex. Z (noting that Plaintiff was warned not to use e-call button unless it was an actual emergency); Ex. HH (plaintiff testimony in another case regarding use of the emergency button).  Similarly, Plaintiff claims a policy or practice of "delays or denials in responding to inmates' urgent medical needs as well as sending them for outside medical care." Opp. at 20.  As evidence, Plaintiff relies on Wittels Decl. Ex. R (Luders Depo.) at 83 (general practice to see patients "as soon as possible," usually 24 to 48 hours, but no policy that requests for pain medication be responded to in a particular amount of time); Ex. R at 15-16 (took several days after referral for Plaintiff to get x-ray  because "it usually takes a while to process the order"); <u>see generally</u> Ex. H (Plaintiff's multiple medical request forms seeking pain relief).  Plaintiff also relies on evidence from other cases against the County for this point.  <u>See</u> Opp. at 20 (referring generally to Wittels Decl. E's. EE, Ff, GG, HH, KK).  Though not briefed by the parties, the Court also notes evidence of an affirmative policy that prison staff are not allowed to administer prescription medication, coupled with an apparent lack of any alternative procedures which would allow prisoners to timely get their prescription medications if they are not in their cells during scheduled medication rounds for readily foreseeable reasons such as court appearances.  At oral argument, the County Defendants' response to this concern was merely that CFMG has an infirmary on-site and makes rounds on a routine basis so a prisoner can obtain prescription medication on the next round or put in a "sick call" slip. However, there appears to be a triable issue of fact whether such provisions suffice for prisoners in need of pain medication or other required prescription medication at certain prescribed intervals.

The County Defendants reply that evidence of other "similar acts" to prove a policy or custom is improper, citing a district court case from New York for the position.  <u>See</u> <u>Amatucci v.</u>

1   Delaware & Hudson Ry. Co., 745 F.2d 180 (C.A.N.Y. 1984).  The Court disagrees with the County

2   Defendants.  While not all of the evidence of other cases that Plaintiff cites may be relevant or

3   admissible, cumulatively the evidence cited (including evidence of Plaintiff's own multiple requests

4   for pain medication and medical attention on an ongoing basis over a long period of time, the fact

5   that he did not receive an x-ray for several weeks or a CT scan and proper diagnosis for over a

6   month, and the fact there is no adequate policy for ensuring that prisoners are timely provided with

7   their prescribed medications if they are out of their cells during medication rounds) does show a

8   triable issue of fact as to a policy, practice or custom of substandard care by CFMG at MADF, the

9   County's constructive knowledge of the pattern, and the County's failure to act on this knowledge to

10  prevent injury to prisoners.  Plaintiff has presented evidence of more than "isolated or sporadic

11  incidents," as the County Defendants claim (see Reply at 6), and creates a triable issue of fact as to

12  the County's liability regarding deliberate indifference to the serious medical needs of prisoners

13  incarcerated at MADF.  The County Defendants' motion regarding the County and Sheriff Cogbill's

14  (in his official capacity) liability for the inadequate provision of medical care is DENIED.

15          **B.       Eighth Amendment Claims Against Sheriff Cogbill and Espino**

16                  **1.       Excessive Force Claims (Claims 1 and 2) Against Sheriff Cogbill**

17          The County Defendants argue that the Eighth Amendment excessive force claims against the

18  Sheriff Cogbill should be dismissed as a matter of law.  To hold Sheriff Cogbill individually liable

19  for excessive force under § 1983, Plaintiff must show that he was personally involved in the

20  constitutional violation or there is a sufficient causal connection between his wrongful conduct and

21  the constitutional violation.  See Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir.

22  1991); Lares v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (approving jury instruction

23  that police chief would be "liable in his individual capacity if he "set[ ] in motion a series of acts by

24  others, or knowingly refused to terminate a series of acts by others, which he kn[e]w or reasonably

25  should [have] know[n], would cause others to inflict the constitutional injury."  Supervisory liability

26  is imposed against a supervisory official in his individual capacity for his "own culpable action or

27  inaction in the training, supervision, or control of his subordinates," for his "'acquiesce [nce] in the

28  constitutional deprivations of which [the] complaint is made;'" or for conduct that showed a

19

"'reckless or callous indifference to the rights of others. ") (internal citations omitted).  The causal connection can be shown by authorizing or approving practices that cause injury (see <u>Redman</u>, 942 F.2d at 1147-48); by inadequate training (see <u>Preschooler II v. Clark County School Bd. of Trustees</u>, 479 F.3d 1175, 1183); by acquiescence in longstanding policy (see <u>Los Angeles Police Protective League v. Gates</u>, 907 F.2d 879, 894 (9th Cir. 1990)); or by condoning actions of subordinates (see <u>Blankenhorn v. City of Orange</u>, 485 F.3d 463, 485-86 (9th Cir. 2007)).  However, liability cannot be based on an allegation that an individual merely ratified a subordinate's decision.  See <u>Williams v. City of Oakland</u>, 2008 WL 268985 (N.D. Cal. 2008) ("A policymaker's deferential review of a subordinate's discretionary decision is not the basis for Section 1983 liability, unless a subordinate's decision is cast in the form of a policy statement and expressly approved by a policymaker or if a series of decisions by a subordinate official show a custom of which a supervisor must have been aware.") (citing <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1348 (9th Cir.1992)).

Here, there is no allegation that Sheriff Cogbill was personally involved in the alleged use of excessive force against Plaintiff.  Instead, Plaintiff alleges that Sheriff Cogbill (as policymaker for the County) was responsible for the failure to train, hire, supervise and discipline subordinates on the use of force and the acts and omissions were done "pursuant to customs and policies authorized, condoned" by him.  Motion at 11 (quoting SAC at ¶¶ 52-53).  However, for the reasons discussed in the previous section, there is no evidence that the policies pertaining to the use of force at MADF are unconstitutional.  Therefore, the County Defendants' Motion for Summary Adjudication of Claims 1 and 2 for Excessive Force and Failure to Intervene to Prevent Use of Excessive Force is GRANTED as to Sheriff Cogbill.

## 2. Deliberate Indifference to Serious Medical Needs Claim (Claim 3) Against Sheriff Cogbill and Officer Espino

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  See <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).  In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Id.</u> at 105-06.  To prevail, Plaintiff must show both that his medical needs

were objectively serious, and that defendants possessed a sufficiently culpable state of mind in denying the proper medical care. Wilson v. Seiter, 501 U.S. 294, 299 (1991); Lolli v. County of Orange, 351 F.3d 410, 419 (9th Cir. 2003).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 4 (1992). The Supreme Court has interpreted this to mean that the official must have subjectively known of and disregarded an excessive risk to the health and safety of an inmate. See Farmer v. Brennan, 511 U.S. 825, 835 (1994). "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Thus, a defendant is liable only if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847. "In determining deliberate indifference, we scrutinize the particular facts and look for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect. . . . While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice." Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (claims of deliberate indifference by prison doctors).

### a. County and Sheriff Cogbill As Policy Maker for County

Plaintiff argues that, "it would have been virtually impossible for [Sheriff Cogbill] not to know about the series of allegedly avoidable inmate injuries and deaths of MADF inmates." Opp. at 23 (citing Ex. II, containing newspaper articles relating to inmate care and deaths in Sonoma County, including statements made by Sheriff Cogbill, but not specific to Plaintiff). The County Defendants respond that, to be liable for deliberate indifference to serious medical needs, the County and the Sheriff must have had *actual personal* knowledge of Plaintiff's serious medical needs and the substantial risk of harm resulting from failure to treat Plaintiff, and there is no evidence that they even had knowledge of Plaintiff's condition, let alone the seriousness of it. See Wittels Decl. Ex. T (Cogbill Depo.) at 44 ("the first I recall even knowing about this case was when the lawsuit was

21

1    filed"), 53.

2        In Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1191 (9th Cir. 2002), the Ninth

3    Circuit discussed the "confusingly differ[ent]" standard under the Eighth Amendment requiring

4    deliberate indifference to serious medical needs as set forth in Farmer, and the deliberate

5    indifference standard for municipal liability for an omission set forth in Canton. Gibson, at 1188 n.

6    8. Gibson explained that, while Farmer requires "actual notice of conditions that pose a substantial

7    risk of serious harm," Canton assigns municipal liability "even where a municipality has

8    constructive notice that it needs to remedy its omissions in order to avoid violations of constitutional

9    rights." Id.

10       As discussed above, Plaintiff has presented evidence raising a triable issue of the existence of

11   a policy, practice or custom of substandard care by CFMG at MADF (including a policy of not

12   allowing guards to administer prescription medication and not providing adequate alternatives to

13   enure provision of such medications to prisoners in the foreseeable situations when prisoners miss

14   their medications through no fault of their own), that the County had actual knowledge of the policy

15   or practice posing a substantial risk of serious harm, and that the County failed to act on this

16   knowledge to prevent injury to prisoners. It is not necessary for policymaker liability that the

17   County and Sheriff (in his official capacity) specifically knew that their policy or practice would

18   pose a substantial risk of serious harm to Plaintiff in particular, if a jury can infer that they knew that

19   the "policy" would pose a risk to someone in his situation. See Gibson v. County of Washoe,

20   Nevada, 290 F.3d 1175, 1191 (9th Cir. 2002). There is thus a triable issue of fact as to whether the

21   County knew that its affirmative policies posed a substantial risk of violating the constitutional

22   rights of someone in Plaintiff's position and chose to ignore the risk.

23       Alternatively, municipal liability may be based on an omission. To establish a policy of

24   omission, Plaintiff must show that "the municipality's deliberate indifference led to its omission and

25   that the omission caused the employee to commit the constitutional violation." Gibson, 290 F.3d at

26   1186. Plaintiff can establish deliberate indifference only by showing that "the municipality was on

27   actual or constructive notice that its omissions would likely result in a constitutional violation." Id.

28   In addition to the County's affirmative policies regarding medical care of inmates, there is also

evidence that the County's deliberate indifference led to a lack of appropriate policies regarding medical care and that the County was on actual or constructive notice that omission of these policies resulted in constitutional deprivations. Specifically, the evidence raises a triable issue of fasct as to whether the County knew or should have known that Plaintiff and/or others were not provided with prompt and/or constitutionally adequate medical care on several occasions, and failed to take measures to ensure that constitutionally mandated care was being taken of inmates after being put on notice of problems with medical care, and this denial resulted in harm, including prolonged and unnecessary infliction of pain.

For these reasons, the County Defendants' Motion for Summary Adjudication of Claim 3 is DENIED as to the County and Sheriff Cogbill in his official capacity as policymaker for the County.

### b. Sheriff Cogbill In His Individual Capacity

As opposed to Sheriff Cogbill's liability as a policymaker discussed above, to be liable for deliberate indifference to serious medical needs in his individual capacity, the Sheriff must have had actual knowledge of Plaintiff's serious medical need and the substantial risk of harm resulting from failure to treat Plaintiff. There is no evidence that Sheriff Cogbill even had knowledge of Plaintiff's condition, let alone the seriousness of it. See Wittels Decl. Ex. T (Cogbill Depo.) at 44 ("the first I recall even knowing about this case was when the lawsuit was filed"), 53. See Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003) (affirming summary judgment of medical needs claim against sheriff because there was insufficient evidence that sheriff knew of plaintiff's diabetic condition). Therefore, the County Defendants' Motion for Summary Adjudication of Claim 3 is GRANTED as to Sheriff Cogbill in his individual capacity.

### c. Officer Espino

The County Defendants contend that there is no evidence supporting Plaintiff's claim against Officer Espino for indifference to serious medical needs because of the timing of Plaintiff's allegations. At Plaintiff's deposition, he indicated that his claims against Officer Espino were based on acts or omissions that occurred in November and December 2007, several months after the alleged attack. See Freeman Decl. Ex. A (Baker Depo.) at 134-40. Specifically, Plaintiff testified that in November 2007, he asked Officer Espino and another officer for Tylenol and they ignored

23

him and went back to their desk so he pushed the emergency call button. Id. at 136-37. When admonished by unnamed officer(s) not to push the button unless he was dying, he stated, "I am pretty much dying. I'm in pain." Id. While it is unclear whether or not Officer Espino heard this statement, an inference can be drawn that it was made in his presence and he heard it. See id.; Wittels Decl. Ex. B at ¶¶ 26-27. In December 2007, Plaintiff notified Officer Espino that he missed his daily medication because he was in court or elsewhere, and Officer Espino did not help him get medication. Id. at 134-35. Another time, Plaintiff requested Tylenol from Officer Espino, and the officer later kicked some under the door. Id. at 138. At deposition, Plaintiff explained that interactions with Officer Espino were after he got out of the "hole" while he was in F-module, which was several months after the alleged attack, which is how he calculated the dates. Id. at 135.

According to the County Defendants, by November and December 2007, Plaintiff's alleged injury was no longer a "serious medical need" because he allegedly admitted to Dr. Tiernan that he was feeling better by mid-October and by November 1 he stated that his pain was "almost completely gone." Dagey Decl. Ex. A at CFMG00076 ("He has had pain in the area when he opened and closed but stated that it is almost completely gone."). Further, the County Defendants contend that Officer Espino was not even authorized to administer prescription medication to Plaintiff. See Wittels Decl. Ex. X at 24-25 (prison staff gives out Tylenol and antacids but not prescription medications which is responsibility of medical staff). The County Defendants contend that none of this evidence supports a finding that denial of prescription medication or Tylenol subjected Plaintiff to further significant injury or the wanton infliction of pain and so summary judgment is appropriate.

However, the dates described in Plaintiff's deposition differ significantly from the dates testified to in Mr. Baker's declaration. See Ex. B (Baker Decl.) at ¶ 17 (around September 23, Espino refused to provide a grievance form to complain about administration of pain medication), ¶ 26 (around October 8, Espino refused to get missed dose of medication or notify nurse), ¶ 28 (around October 9, Espino refused to get missed dose of medication). The County Defendants argue that the statements in the declaration, which contradict his deposition testimony, should be ignored as a "sham." However, as discussed above, this type of discrepancy does not rise to the level of a

1 "sham" affidavit that must be disregarded. Thus, summary judgment based on the County's timing

2 argument is not warranted. Further, Plaintiff stated in his deposition that he did *not* tell Dr. Tiernan

3 during the November 1 meeting that he was feeling better or was better able to chew; but only that

4 he was on pain medication and the pain was going down. Litton Decl. Ex. A at 180-82. Thus it is

5 not undisputed that Plaintiff had no pain in November or December.

6       To support his claim against Officer Espino, Plaintiff further contends that, "[b]ased upon

7 Mr. Baker's obvious condition, the content of his written medical requests, and his ardent pleas for

8 pain relief, it is plainly inferable that Defendant Espino knew that Mr. Baker's health and well-being

9 were in jeopardy . . . [and] willfully disregarded that risk." Opp. at 25. Plaintiff relies on Dr.

10 Tiernan's report and expert medical testimony of Dr. Scherl to argue that the failure to treat

11 Plaintiff's facial injury in a timely manner resulted in the inability to reset the bone break and caused

12 "serious and lasting injury as well as chronic, daily pain." Opp. at 24. Dr. Scherl's declaration

13 states that "Mr. Baker had severe pain problems during the first several months following his injury

14 and a serious medical need for prescription pain medication on a daily basis." Wittels Decl. Ex. Y ¶

15 14. Additionally, pages 134 through 140 of Plaintiff's deposition, describing interactions with

16 Officer Espino, raise a triable issue of fact as to whether Plaintiff told Officer Espino that he was in

17 pain and needed medication. See Baker Depo. at 134-40; Wittels Decl. Ex. A ¶¶ 26-28. Plaintiff

18 also points to paragraph 16 of Plaintiff's declaration, where someone other than Officer Espino was

19 shocked to see Plaintiff's face on or about September 19, and exclaimed "Oh my God!" as evidence

20 that Plaintiff's face was visibly injured, raising the inference that Officer Espino must also have

21 known of his injuries. Id. Ex. B at ¶ 16. While none of this evidence establishes Officer Espino's

22 actual knowledge of Plaintiff's injury or the extent of his pain, it does support a reasonable inference

23 that anyone who saw Plaintiff's face, including Officer Espino, would have noticed that he was

24 seriously injured and in pain. Further, it is inferable that Officer Espino knew that any prescription

25 medication was important and should be timely administered, and his failure to summon appropriate

26 medical personnel to give Plaintiff his prescription medication could result in harm.

27       The Ninth Circuit's reasoning in Lolli indicates that Plaintiff has similarly raised a triable

28 issue of fact. There, the Ninth Circuit reversed summary judgment and found that there was a triable

issue of fact as to whether individual officers who knew that plaintiff was a diabetic and needed food also knew of the serious risk of harm if he did not receive food.  Lolli, 351 F.3d at 421.  While there was no direct evidence of the officers' knowledge of the risk of harm from failing to provide a diabetic with food, circumstantial evidence raised a triable issue as to their indifference to the prisoner's extreme behavior, obviously sickly appearance and his explicit statements that he was a diabetic and needed food.  Id.  The Ninth Circuit concluded that a jury could reasonably infer that the officers who knew he was a diabetic and needed food also knew of the risk of harm he faced if denied medical attention.  Id. (but denying liability as to Sheriff and officers who did not know of plaintiff's condition).  While it is a close question, drawing all reasonable inferences in favor of the Plaintiff, as the Court must on summary judgment, there is a triable issue of fact as to Officer Espino's knowledge of Plaintiff's serious medical need (e.g., from looking at his bruised face and hearing his complaints of pain and requests for medication) and the substantial risk of harm resulting from failure to treat Plaintiff (i.e., by providing him with Tylenol or other pain medication, summoning a nurse to administer prescription medication, or providing a grievance form, as requested).  Given the foregoing, summary adjudication of Plaintiff's Claim 3 against Officer Espino is DENIED.

###          C.          Qualified Immunity of Cogbill and Espino

The County Defendants contend that Sheriff Cogbill and Officer Espino are entitled to qualified immunity from suit.  In Saucier v. Katz, 533 U.S. 194, 201 (2001), the Supreme Court mandated a two-step sequential process for resolving such claims.  First, courts consider the threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier, 533 U.S. at 201 ("In the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established.").  Second, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."  Id.  In Pearson v. Callahan, 129 S. Ct. 808, 818 ( 2009), the Court receded from Saucier, holding "that the Saucier protocol should not be regarded as mandatory in all cases," but instead judges should

1    exercise their sound discretion as to which of the two prongs of the analysis to address first.  Id.   In

2    Pearson, the Court determined that the officers in that case were entitled to qualified immunity "on

3    the ground that it was not clearly established at the time of the search that their conduct was

4    unconstitutional," without first deciding whether the facts shown by the plaintiff constituted a

5    violation of a constitutional right.  Id.

6         The standard for qualified immunity is the "'objective legal reasonableness' of the action,

7    assessed in light of the legal rules that were 'clearly established' at the time it was taken."  Anderson

8    v. Creighton, 483 U.S. 635, 638 (1987) (citing Harlow v. Fitzgerald, 457 U.S. 800 (1982)).

9    "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail

10   if the right asserted by the plaintiff was not 'clearly established' or the [official] could have

11   reasonably believed that his particular conduct was lawful."  Romero v. Kitsap County, 931 F. 2d

12   624, 627 (9th Cir. 1991).  If the defendant had a reasonable but mistaken belief that the conduct was

13   lawful, qualified immunity applies.  Saucier, 533 U.S. at 205-6.

14                    **1.    Sheriff Cogbill's Qualified Immunity For § 1983 Claims**

15        The County Defendants contend that there is no evidence that any act or omission by Sheriff

16   Cogbill or his subordinates constituted a policy or custom of the County, and therefore his actions

17   were reasonable and he is entitled to qualified immunity.  Plaintiff opposes this argument, without

18   citation to evidence, by contending that Sheriff Cogbill was responsible for "establishing,

19   formulating, enforcing, implementing, ratifying, sanctioning, and/or condoning MADF's blatantly

20   deficient policies and procedures and neglecting to address the repeated failures of medical

21   services."  Opp. at 26.  Plaintiff also contends that Sheriff Cogbill "willfully failed to properly

22   screen, train, supervise, and/or discipline Defendants Lincoln, Cortez and Espino" and therefore has

23   no immunity from liability for their actions.  Id.

24        As discussed above, Plaintiff has put forward no admissible evidence of the deficiencies of

25   MADF's policies and procedures regarding use of force, and there is no evidence that the Sheriff's

26   action or inaction with respect to any such policy was unreasonable or unconstitutional.  Therefore,

27   Sheriff Cogbill is entitled to qualified immunity from suit relating to the use of force.

28        Regarding Plaintiff's allegations relating to inadequate medical care, Plaintiff has presented

1  some evidence of a policy or custom, and omission, leading to inadequate medical care of prisoners

2  in MADF by pointing to other similar cases where adequate medical care was not provided as well

3  as Plaintiff's own repeated requests for pain medication and other care.  A prisoner's right to

4  constitutionally adequate medical care while incarcerated is "clearly established," and there is a

5  question of fact as to whether Sheriff Cogbill's actions and/or omissions with respect to this right

6  were reasonable under the circumstances.  Therefore, summary adjudication of this issue is

7  DENIED.

8           **2.      Officer Espino's Qualified Immunity For Deliberate Indifference to
                      Medical Needs Claim**
9

10          The County Defendants contend that Officer Espino is entitled to qualified immunity because

11  the allegations against him relate only to three instances where he allegedly failed to provide

12  Plaintiff with Tylenol or to assist in obtaining other medications.  The County Defendants contend

13  that Officer Espino did not have the authority to provide prescription medication (see Wittels Decl.

14  Ex. X at 24-25), and followed MADF policy in using his discretion to decide whether to provide (or

15  not provide) Plaintiff with Tylenol.  Therefore, according to the County Defendants, Officer Espino

16  could not have been on notice of any constitutional violation.

17          However, and as discussed extensively above, there is a question of fact as to whether

18  Officer Espino violated Plaintiff's rights by showing a deliberate indifference to his serious medical

19  needs.  Plaintiff contends that it is "inconceivable that Defendant Espino would have found it

20  reasonable to refuse Mr. Baker's constant requests for medication and medical attention knowing

21  that Mr. Baker was in severe pain and that his health was in jeopardy."  Opp. at 26.  The Court

22  agrees that a reasonable inference can be drawn that Officer Espino knew of Plaintiff's medical

23  condition and that a refusal to provide Tylenol or otherwise assist in obtaining pain and other

24  prescription medication or a grievance form would cause unnecessary and wanton infliction of pain

25  in violation of the Constitution.  Accordingly, summary adjudication of this issue is DENIED.

26          **D.      Failure to Exhaust Administrative Remedies Under California Law**

27          The County Defendants contend that all of Plaintiff's state law claims must be dismissed for

28  lack of jurisdiction because he failed to exhaust administrative remedies as required by California

law. See Wright v. State of California, 122 Cal. App.4th 659, 664-665 (2004) (affirming demurrer based on prisoner's failure to exhaust administrative remedies relating to claims of medical malpractice and failure to provide pain medication). Plaintiff does not argue that he has exhausted all administrative remedies. Instead, he responds that the County Defendants have not met their burden of establishing this "affirmative defense" and he was not required to exhaust administrative remedies because exhaustion would have been futile.

Plaintiff has admitted that he was generally familiar with the grievance procedure, and claims to have filed two grievances relating to lack of medical care (though only one has been located). See Freeman Decl. Ex. A at 42, 140-42; Toby Decl. ¶ 9.[4] The grievance that has been located states: "The problem I am having is with Dr's and pain medication. This is about the 4th or 5th time the pain medication I am on has been stoped." Dagey Decl. Ex. A at CFMG00145. Plaintiff's requested solution is: "that the pain medication be continued until I am healed. I have fractures still." Id. In response to his grievance, MADF responded that he could "make an additional request [for pain medication] by submitting a sick call slip." Dagey Decl. Ex. A at CFMG00143. The County Defendants argue that Plaintiff did not appeal this decision as required by the MADF grievance procedure. The County Defendants further contend that this grievance does not relate to Plaintiff's state law claims against Sheriff Cogbill, Officers Cortez, Lincoln, Espino or the County of Sonoma because it is directed only to the failure to provide pain medication.

As an initial matter, the parties dispute whether the exhaustion requirement is jurisdictional, or whether it is treated as an affirmative defense on which the Defendants bear the burden of proof. Plaintiff cites Tubbs v. Sacramento County Jail, 2008 U.S. Dist. LEXIS 74242 (E.D. Cal. Aug. 13, 2008), where the Court held that lack of exhaustion under the Prison Litigation Reform Act is an affirmative defense that the defendant bears the burden to prove. However, here the County Defendants are only arguing that exhaustion bars Plaintiff's state law claims, so the PLRA does not apply. See 42 U.S.C. § 1997e(a) (PLRA exhaustion requirement applies to § 1983 and other federal

---

[4]The Court notes that, while the declaration may raise an issue of fact as to whether two grievances were filed, it does not raise an issue of fact as to whether Plaintiff exhausted his administrative remedies, where he admittedly did not exhaust them even with respect to the one grievance that has been located.

claims). Under California law, the exhaustion requirement is jurisdictional and Plaintiff bears the burden of showing that he has complied. See Wright v. State of California, 122 Cal. App. 4th 659, 665 (2004).

Next, Plaintiff contends that he was not required to exhaust administrative remedies because his jailers abused him. He again relies on Tubbs, in which the Court found that the defendants had not met their burden of showing that the prisoner failed to exhaust administrative remedies, where the plaintiff claimed that his attempts to file some grievances were thwarted, one grievance was ignored, and he exhausted his administrative remedies with respect to one grievance because the process did not provide for an appeal. 2008 U.S. Dist. LEXIS 74242 at *4-5. Notably, Tubbs did not excuse the exhaustion requirement simply because the plaintiff claimed to have been abused, as Plaintiff contends.

Plaintiff cites other non-California cases where courts have excused the exhaustion requirement because the prisoner was not given the opportunity to utilize the administrative process, including due to threats by prison guards. See Hemphill v. New York, 380 F.3d 680, 688 (2d Cir. 2004). Plaintiff argues that he was beaten just after booking and was afraid to name his attackers. However, he repeatedly complained about the lack of medical care thereafter. He contends that his jailers refused to assist him in obtaining medical attention, taunted and intimidated him, and in at least one instance refused to provide grievance forms. Opp. at 29; see also Litton Decl. Ex. A at 134-40. Plaintiff's declaration states that he repeatedly requested grievance forms in the days following his assault, but his requests were refused or denied without explanation. See Wittels Decl. Ex. B (Baker Decl.) ¶ 11; see also ¶ 17 (Espino refused to provide grievance form to complain about administration of pain medication). However, this testimony directly contradicts his argument that he was too afraid to file a grievance relating to the use of excessive force or name his attackers. Further, it is undisputed that Plaintiff filed at least one grievance in December 2007, and agreed that he "felt comfortable making a grievance." Freeman Decl. Ex. A (Baker Depo.) at 140. This is confirmed by the dozens of "Inmate Request Forms" and "Inmate Health Services Request Forms" that Plaintiff filled out during his incarceration. See generally Wittels Decl. E's. H, I. It is also undisputed that he understood, in at least general terms, the grievance procedure. Freeman Decl. Ex.

30

A. at 42 ("The grievance process is like a request, but it has different sections as you go on. So you ask a question, and the sergeant, you know, responds to it.  And then . . . if you see that it's working . . . then you can either submit it to the second level . . .").  Therefore, Plaintiff's legal argument that he was effectively prevented from exhausting his administrative remedies throughout his incarceration due to threats or fear have no factual basis.

Plaintiff also briefly hypothesizes that the grievance procedure "may be seen as 'sufficiently confusing as to lead the plaintiff to believe he could not file a grievance' relating to his initial beating."  Opp. at 29 n.14.  However, the Inmate Handbook provides that, "Inmates have the right to grieve any condition of their confinement, including, but not limited to: . . . disciplinary actions."  Wittels Decl. Ex. BB at § 3.1.  The handbook contains a detailed explanation of the grievance procedure, and the grievance form itself is very clear.  See id. Ex. J.  Further, Plaintiff does not state that he was confused by the form, and there is no other evidence supporting this theory.  Therefore, this argument has no merit.

For the foregoing reasons, Plaintiff's state law claims are barred for failure to exhaust administrative remedies and lack of evidence raising a triable issue as to futility.  Summary adjudication of Plaintiff's state law claims – including Plaintiff's fourth claim for assault and battery, fifth claim for negligence, sixth claim for failure to summon medical care under California Government Code § 845.6 and failure to discharge a mandatory duty under § 815.6, eighth claim for neglect of a dependent adult under California Welfare & Institutions Code § 15657, ninth and tenth claims for negligent and intentional infliction of emotional distress, and eleventh claim for violation of the Bane Civil Rights Act – is GRANTED.   In light of this decision, the Court need not reach the merits of the County Defendants' arguments with respect to the individual state law claims, or the County Defendants' arguments regarding immunity pursuant to California Government Code Section 820.2.

Dated: March 19, 2010

_Elizabeth D. Laporte_
ELIZABETH D. LAPORTE
United States Magistrate Judge